IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL NELSON, :
:
      Plaintiff :
:
v. : CIVIL NO. 3:CV-16-2487
:
MARK GARMAN, ET AL., : (Judge Conaboy)
:
      Defendants :

## **MEMORANDUM**
### **Background**

Michael Nelson (Plaintiff), an inmate presently confined at the State Correctional Institution, Camp Hill, Pennsylvania (SCI-Pennsylvania), initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. Service of the complaint was previously ordered.

Named as Defendants are the following officials at Plaintiff's prior place of confinement the Rockview State Correctional Institution, Bellefonte, Pennsylvania (SCI-Rockview): Superintendent Mark Garman; Deputy Superintendent for Centralized Services Morris Hauser; Correctional Counseling Program Manager Tim Miller; Major Heather Haldeman; Unit Manager Fred Reibsome; Health Care Administrator William Williams; Psychiatrist/Doctor Burke; Certified Registered Nurse Practitioner (CRNP) Forsyth; Psychologists Tice, Smith, Miller, and Olson; Chief Psychologist

1

Richard Goss; Correctional Counselors Baumgardner and Lansberry; Licensed Practical Nurses (LPN) Julie and Michelle; Sergeant Best; Correctional Officers St. Clair and Taylor; Social Worker Ralph; Lieutenants Vangorder and Vance; and Director of Education Martin. The Plaintiff is also proceeding against two Pennsylvania Department of Corrections (DOC) officials, Chief of Psychological Services Robert Marsh and Director of Special Investigations James Barnacle.

Plaintiff states that while confined at SCI-Rockview he was identified as having serious mental health problems and assigned to a Residential Treatment Unit (RTU). Following a November 11, 2015 video conference with Doctor Blissenbach, a psychiatrist, his medication Tegretol was increased. See Doc. 1, ¶ 34.

Upon receiving the increased medication from LPN Michelle the following day, Nelson allegedly experienced blurred vison. Correctional Officers St. Clair and Taylor allegedly ignored the Plaintiff's request for medical treatment. Later that same day, Nelson contends that LPN Julie decided on her own to decrease the dosage of Tegretol from 400mg to 300mg. Plaintiff purportedly began suffering additional side effects the next day.

On November 14, 2015, Plaintiff told Nurse Michelle that he was contemplating suicide but that Defendant purportedly failed to take any action other then to also give Plaintiff a decreased dosage (300mg) of his medication. Nelson remained on the decreased medication for a total of twelve (12) days. Other officials including Unit Manager Reibsome and Health Care

2

Administrator Williams allegedly displayed deliberate indifference to Nelson's treatment and covered up the alleged improper care by Defendants Julie and Michelle.

Plaintiff also contends that he was issued a misconduct by Defendant St. Clair during the twelve (12) day period which was improper because it was based upon behavior caused by his mental illness, apparently the decreased dosage.[1] There are also claims that Nelson was subjected to verbal harassment and racial slurs by some members of the correctional staff.

Presently pending is a motion to dismiss filed by Defendants Doctor Burke and CRNP Forsyth. See Doc. 30. The motion is ripe for consideration.

## Discussion

With respect to the Moving Defendants, the Complaint asserts that Plaintiff met with CRNP Forsyth on December 7, 2015 and informed her that two nurses had altered his mental health medication. Defendant Forsyth allegedly telephoned the nursing staff and informed Nurse Michelle that the nursing staff could not alter the dosage of Plaintiff's medications and reordered the Tegretol prescription in accordance with Doctor Blissenbach's orders. See Doc. 1, ¶ 42. However, Nelson asserts that Forsyth acted improperly by not taking other action against the two nurses. The Complaint also alleges that by not removing a misconduct charge filed against him, Forsyth violated the inmate's rights because the underlying conduct resulted from the impoper altering of his mental health medication. See id. at ¶ 51.

---

1. Plaintiff indicates that the misconduct negatively impacted his parole eligibility.

3

In regards to Doctor Burke, Nelson contends that said Defendant also failed to take remedial action against the two nurses when informed about the alleged improper alteration of his medication for a twelve (12) day period and by not dismissing a misconduct issued to Nelson for misconduct arising during the period when his medication had been improperly decreased.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. A court in addressing a motion to dismiss must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

A complaint must set forth facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Id. at 556. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id. Legal conclusions must be supported by factual allegations and the

4

complaint must state a plausible claim for relief. See id. at 679.[2]

The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Finally, it is noted that pro se pleadings must be afforded liberal construction. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Deliberate Indifference**

The Moving Defendants initially argue that Plaintiff offers no facts showing that he suffered from a serious mental health need. See Doc. 43, p. 4. It is additionally argued that there are no discernible claims that either Doctor Burke or CRNP Forsyth ignored Plaintiff's mental health needs.

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn

---

2. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555.

5

that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

6

With respect to the serious medical need requirement, exhibits attached to the Complaint clearly show that Plaintiff was deemed to have a serious mental illness by prison officials. See Doc. 1, p. 55. Based upon that designation, this Court is satisfied at this juncture that the serious medical need requirement has been satisfied.

With respect to the subjective deliberate indifference component, the Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 841. A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is

7

proven if necessary medical treatment is delayed for non-medical reasons.").

According to the Complaint, Plaintiff met with CRNP Forsyth on December 7, 2015. During that meeting, Nelson maintains that he told the Defendant that two nurses had altered the dosage of his medication. Upon receiving this information, Nelson acknowledges that Forsyth immediately called Nurse Michelle and told her that the nursing staff could not alter the dosage of an inmate's medication. See Doc. 1, ¶ 42. Plaintiff also admits that Forsyth reordered Plaintiff's medication in the correct dosage. See id. Nelson concludes by describing Forsyth's conduct failure to reprimand the two nurses as being negligent. Plaintiff also asserts that Forsyth and Burke both acted improperly when they failed to have a misconduct issued against the inmate during the same twelve (12) day period dismissed because it resulted from insufficient medication.

Plaintiff alleges that he asked to see Doctor Burke on January 20, 2016 about the decreased dosage given to him by the two nurses the preceding November. See Doc. 1, ¶ 48. According to the Complaint, Plaintiff contacted Doctor Burke on March 23, 2016, April 4, 2016 and April 5, 2016 about the 12 day decrease in dosage of his medication and similarly asked that the offending nurses be reprimanded and the aforementioned misconduct charge be removed from his record. See id. at ¶ 59-61, 67.

The gist of the claims against both Burke and Forsyth is that they failed to reprimand the two nurses and they did not have a misconduct charge filed against Plaintiff expunged because the underlying conduct was the result of his decreased medication.

8

Based upon his own factual assertions, Plaintiff has failed to satisfy the deliberate indifference requirement of Estelle. Although the Moving Defendants may not have reprimanded the two nurses who allegedly decreased the dosage of his medication or had a misconduct charge dismissed, such conduct does not support a claim that either Defendant failed to provide or delayed needed medical care as required under Estelle. Furthermore, as noted above, allegations of negligence are insufficient to set forth a deliberate indifference claims. In conclusion, the allegations asserted against the Moving Defendants simply do not rise to the level of a viable constitutional misconduct claim.

**Punitive Damages**

Moving Defendants argue in part that the Complaint has failed to make the requisite showing to warrant an award of punitive damages. See Doc. 43, p. 6.

An award of punitive damages under § 1983 is appropriate when a defendant's conduct was shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996); see also Smith v. Wade, 461 U.S. 30, 56 (1983). In Alexander v. Riga, 208 F.3d 419, 430 (3d Cir. 2000), the Court of Appeals for the Third Circuit reiterated the standard established in Smith and Coleman. The Court in Alexander added that punitive damages may be awarded in a civil rights case where a jury finds a civil rights violation even if it has not awarded compensatory or nominal damages.

9

Pursuant to the Court's discussion, herein, Plaintiff has not sufficiently set forth a claim of reckless or callous indifference to his constitutional rights. Accordingly, this Court agrees that there is no basis for an award of punitive damages.

**Certificate of Merit**

The Moving Defendants' nfinal argument contends that Plaintiff's state law claims of medical negligence should be dismissed because he failed to file the required certificate of merit. See Doc. 43, p. 15.

In order to present a prima facie case of medical malpractice /negligence under Pennsylvania state law, a plaintiff has the burden of presenting expert testimony by an appropriate licensed professional who can testify to a reasonable degree of medical certainty that the actions or omissions of the defendant deviated from acceptable medical standards, and that said deviation constituted a substantial factor in causing the Plaintiff's injury. Simpson v. Bureau of Prisons, 2005 WL 2387631 *5 (M.D. Pa. Sept. 28, 2005)(Vanaskie, C.J.).[3]

Rule 1042.3 requires a person who brings a claim of medical malpractice/negligence to file an appropriate certificate of merit either with the complaint or within sixty (60) days

---

3. The only exception to this rule is where the matter "is so simple and the lack of skill or want of care is so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons." Berman v. United States, 205 F. Supp.2d 362, 264 (M.D. Pa. 2002) (citing Brannan v. Lankenau Hospital, 490 Pa. 588 (1980). However, the instances when expert opinions may be unnecessary are rare. See Simpson, 2005 WL *6; Arrington v. Inch, 2006 WL 860961 *7 (M.D. Pa. March 30, 2006) (Conner, J.).

10

thereafter. The Rule 1042.3 certificate must certify that either: (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the conduct which is the subject of the complaint fell outside acceptable professional standards and was a cause in bringing about the harm; (2) the claim of deviation by defendant from an acceptable professional standard is based solely upon allegations that other licensed professionals for whom defendant is responsible deviated from an acceptable professional standard; (3) expert testimony of an appropriate licensed professional is unnecessary.

Courts within this circuit have recognized that Rule 1042.3 is substantive law and should be applied by federal courts sitting in diversity. Schwalm v. Allstate Boliler & Construction, 2005 WL 1322740 *1 (M.D. Pa. May 17, 2005)(Caputo, J.); Scaramuzza v. Sciolla, 345 F. Supp.2d 508, 509-10 (E.D. Pa. 2004). It has also been held that a Plaintiff pursuing an FTCA claim must comply with Pennsylvania substantive law. Arrington, 2006 WL 860961 at *7. In addition, Plaintiff's incarceration or pro se status is not a viable basis upon which to excuse compliance with Rule 1042.3 or the requirement of coming forth with expert medical testimony. See Perez v. Griffin, 2008 WL 2383072 *3 (M.D. Pa. June 9, 2008)(Rule 1042.3 applies to incarcerated and pro se plaintiffs and constitutes a rule of substantive state law to which plaintiffs in federal court must comply).

11

Since Plaintiff has not submitted a proper Rule 1042.3 certificate of merit or otherwise indicated that he has retained an expert witness, it is appropriate for this court to dismiss all of his pending medical malpractice/negligence claims without prejudice. See Osorio v. United States, 2007 WL 2008498 *2 (W.D. Pa. July 5, 2007); see also Henderson v. Pollack, 2008 WL 282372 *4 (M.D. Pa. Jan 31, 2008)(Caldwell, J.)(citing Hartman v. Low Security Correctional Institution, Allenwood, 2005 WL 1259950 * 3 (M.D. Pa. May 27, 2005)(Muir, J.).[4]

**Pendent Jurisdiction**

Federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts. See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, 9 (1976). A district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3) (1997). Decisions regarding pendent jurisdiction should be premised on considerations of judicial economy, convenience and fairness to the litigants. New Rock Asset Partners v. Preferred Entity Advancements, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the federal claim does not deprive the court of

---

4. In light of this determination as well as the non-exhaustion and untimeliness arguments set forth below, Defendant's remaining argument that Plaintiff's medical negligence FTCA claims lacks merit will not be addressed.

12

jurisdiction to adjudicate the pendent claim. Id. (citing Lentino v. Fringe Emp. Plans, Inc., 611 F. 2d 474, 479 (3d Cir. 1979)). However, when the federal claim is dismissed prior to trial, a district court should decline to decide the pendent state claims, "unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).

Therefore, even if it was determined that the submission of a certificate of merit was not warranted in this matter, since all of the Plaintiff's federal claims against the Moving defendants have been dismissed, jurisdiction will be declined with respect to Nelson' state law negligence claims against Defendants Burke and Forysth. An appropriate Order will enter.

RICHARD P. CONABOY
United States District Judge

DATED: FEBRUARY 7th, 2018

13