IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


MICHAEL NELSON,                    :
                                   :
          Plaintiff                :
                                   :
     v.                            :     CIVIL NO. 3:CV-16-2487
                                   :
MARK GARMAN, ET AL.,               :     (Judge Conaboy)
                                   :
          Defendants               :

_____

**MEMORANDUM**
**Background**

Michael Nelson (Plaintiff), an inmate presently confined at the State Correctional Institution, Camp Hill, Pennsylvania (SCI-Pennsylvania), initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. By Memorandum and Order dated February 9, 2018, Defendants Doctor Burke; Certified Registered Nurse Practitioner (CRNP) Forsyth's motion to dismiss was granted. See Doc. 115.

Remaining Defendants include two Pennsylvania Department of Corrections (DOC) officials, Chief of Psychological Services Robert Marsh and Director of Special Investigations James Barnacle, as well as Defendant Martin of the Pennsylvania Attorney General's Office,. The other Remaining Defendants are the following officials at Plaintiff's prior place of confinement the Rockview State Correctional Institution, Bellefonte, Pennsylvania (SCI-

1

Rockview): Superintendent Mark Garman; Deputy Superintendent for Centralized Services Morris Hauser; Deputy Superintendent McMahan; Erin Miller; Correctional Counseling Program Manager Tim Miller; Major Heather Haldeman; Unit Manager Fred Reibsome; Health Care Administrator William Williams; Psychologists Tice, Smith, Miller, and Olson; Chief Psychologist Richard Goss; Correctional Counselors Baumgardner and Lansberry; Licensed Practical Nurses (LPN) Julie Chamberlain and Michelle Silks; Sergeant Best; Correctional Officers St. Clair, Stover, and Taylor; Social Worker Ralph; Lieutenants Vangorder and Vance.

According to the Complaint, Plaintiff was diagnosed as having serious mental health problems ("major depressive disorder") and assigned to a Residential Treatment Unit (RTU) at SCI-Rockview.  Doc. 1, ¶ 33.  Following a November 11, 2015 tel-med video conference with Doctor Blissenbach, a psychiatrist, his mental health medication, Tegretol was increased from 200 mg twice daily to 400 mg twice daily.

Upon receiving the initial dose of increased medication from LPN Michelle Silks the following day, Nelson allegedly experienced blurred vison.  Correctional Officers St. Clair and Taylor allegedly ignored the Plaintiff's request for immediate medical treatment.  See id. at ¶ 35.

On Friday November 13, 2015, Nelson contends that after he complained of blurred vison to LPN Julie Chamberlain, she decided on her own to decrease the dosage of Tegretol from

400 mg to 300 mg by simply snapping one of the two 200 mg tablets he was receiving in half. Nelson asserts that the action taken by LPN Chamberlain was improper because that Defendant was not medically qualified to decrease the previously prescribed dosage of his medication. Plaintiff states that he began developing additional side effects.

On the morning of November 14, 2015, Plaintiff claims that he received another decreased dosage of his medication from Defendant Chamberlain and she purportedly ignored his complaints of suffering additional side effects. See id. at ¶ 37. The following morning, Plaintiff states that he told Nurse Michelle Silks that he was contemplating suicide but the Defendant purportedly failed to take any action other then to give Plaintiff a decreased dosage (300 mg) of his medication. Nelson states that he remained on the decreased medication for a total of twelve (12) days.[1]

During that period, prison officials including Unit Manager Reibsome and Health Care Administrator Williams allegedly displayed deliberate indifference to Nelson's treatment and covered up the alleged improper alteration of his prescribed medication by Defendants Chamberlain and Silks. Plaintiff further claims that multiple other Defendants violated his rights by failing to take appropriate action on numerous grievances which he initiated and

---

1. Plaintiff acknowledges that CRNP Forsyth eventually informed the nursing staff that they could not alter the dosage of Plaintiff's medications and reordered the Tegretol prescription in accordance with Doctor Blissenbach's orders. See Doc. 1, ¶ 42.

3

complaints he made concerning the alleged improper alteration of his medication.

Plaintiff also contends that he was issued a misconduct by Defendant St. Clair for failing to obey an order regarding an incident with another prisoner on Thursday, November 26, 2015 (during the twelve (12) day period which he received decreased doses of his medication). See id. at ¶ 41. Nelson maintains that the misconduct should have been dismissed or overturned because it was based upon behavior caused by his mental illness, apparently the decreased dosage.[2] He also seeks to assert liability against multiple Defendants for their failure to expunge or overturn the misconduct despite their knowledge that Plaintiff was receiving decreased medication at the time of the underlying incident. In relation to this claim, Plaintiff asserts that a response to one of his appeals was on SCI-Houtzdale letterhead, which he concludes was an ethical violation.

There are also claims that Nelson was subjected to verbal harassment and racial slurs by members of the correctional staff including Unit Manager Reibsome, Correctional Officers Taylor, Stover, and Best. See id. at ¶ ¶ 39,49. The Complaint further contends that on or about December 7, 2015 Plaintiff was placed in a Restricted Housing Unit (RHU) cell for nine days without a shower or recreation. See id. at ¶ 42. However, none of the Defendants are identified as having been involved with this RHU placement.

---

2. Plaintiff adds that the misconduct negatively impacted his parole eligibility.

Nelson seeks compensatory and punitive damages as well as injunctive relief.                               Presently pending is Remaining Defendants' motion to dismiss the Complaint for failure to state a claim.  <u>See</u> Doc. 31.  The motion is ripe for consideration.

## **Discussion**

Remaining Defendants claim entitlement to dismissal on the grounds: (1) the claims against many of the Defendants should be dismissed for lack of personal involvement; (2) a viable assertion of retaliation is not raised in the Complaint; (3) an actionable claim of deliberate indifference to Nelson's medical needs is not alleged; and (4) the allegations of verbal harassment are insufficient.

## **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  A court in addressing a motion to dismiss must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007)(quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).

A complaint must set forth facts that, if true, demonstrate a plausible right to relief.  <u>See</u> Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.

544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  <u>Id</u>. at 556.  A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 , 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." <u>Id</u>.  Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief.  <u>See</u> <u>id</u>. at 679.[3]

The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  <u>Id</u>. at 562; <u>see</u> <u>also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action).  Finally, it is noted that <u>pro</u> <u>se</u> pleadings must be afforded liberal construction.  <u>See</u>  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).

---

3.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, at 555.

**Personal Involvemen**

Remaining Defendants initially argue that the following allegations do not properly assert personal involvement in constitutional misconduct: (1) Director Barnacle of the DOC's Office of Special Investigation and Intelligence failed to act on a Spring, 2016 complaint regarding the purported improper medication alteration; (2) Correctional Counselor Baumgardner, Psychologist Tice, Social Worker Ralph, and Erin Miller served on an SCI-Rockview Psychiatric Review Team on April 5, 2015 which failed to take action on a complaint from Nelson regarding the aforementioned medication alteration; (3) Superintendent Garman improperly denied a misconduct appeal by the Plaintiff on SCI-Houtzdale stationary and failed to grant Plaintiff relief on a grievance appeal; (4) Defendants Bigelow, Confer, Counselor Lansberry, Deputy McMahan, and Deputy Superintendent Hauser allegedly had knowledge that Superintendent Garman used SCI-Houtzdale stationery in denying Plaintiff's misconduct appeal;[4] (5) SCI-Rockview Chief Psychologist Goss and Unit Manager Haldeman failed to expunge Plaintiff's misconduct or to take corrective action on the medication alteration complaint; (6) Defendants Martin, Deputy Superintendent Hauser, and DOC Chief Psychologist Marsh failed to take corrective action on the November 2015 medication alteration months after the incident; (7) Correctional Counseling Program Manager Tim

---

4. It is noted that nelson does not deny that he was guilty of the misconduct, rather, he contends only that the charge should have been withdrawn/overturned because his actions resulted from his mental health problems.

Miller and Psychologist Olson who are both listed as
Defendants but not the subject of any factual allegations;
(8) Psychologist Smith allegedly failed to respond to an
April 29, 2016 complaint regarding the November 2015
purported unauthorized decrease in medication; (9)
Lieutenants Vance and VanGorder who are alleged to have been
made aware of violations of Plaintiff's constitutional rights
months later and failed to take action, and (10) Health care
Administrator Williams with respect to the allegation of
having incorrectly responded to Nelson's grievance.

A plaintiff, in order to state an actionable civil
rights claim, must plead two essential elements: (1) that the
conduct complained of was committed by a person acting under
color of law, and (2) that said conduct deprived the
plaintiff of a right, privilege, or immunity secured by the
Constitution or laws of the United States. <u>Groman v.
Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995); <u>Shaw
by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir.
1990).

Civil rights claims brought cannot be premised on a
theory of <u>respondeat</u> <u>superior</u>. <u>Rode v. Dellarciprete</u>, 845
F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant
must be shown, via the complaint's allegations, to have been
personally involved in the events or occurrences which
underlie a claim. See <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976);
<u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077 (3d
Cir. 1976). As explained in <u>Rode</u>:

> A defendant in a civil rights action must
> have personal involvement in the alleged
> wrongs. . . . [P]ersonal involvement can
> be shown through allegations of personal
> direction or of actual knowledge and
> acquiescence. Allegations of participation
> or actual knowledge and acquiescence,
> however, must be made with appropriate
> particularity.

Rode, 845 F.2d at 1207.

Many of the Remaining Defendants are employed in supervisory roles with the DOC, SCI-Rockview, and also with the Pennsylvania Attorney General's Office. Pursuant to the standards announced in Rode, any claims against those Remaining Defendants solely based upon their supervisory roles cannot proceed.

It is undisputed that Plaintiff filed a multitude of grievances, complaints, and administrative appeals regarding the alleged unauthorized twelve (12) day decrease in his medication and the misconduct charge issued by Defendant St. Clair. Nelson's pending action clearly attempts to establish liability against almost all of the Remaining Defendants due to their responses or non-response to his various administrative appeals, grievances, and complaints.

Prisoners have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir.

9

2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).  Pursuant to those decisions, any attempt by Plaintiff to establish liability against Defendants based upon their handling of his administrative grievances or complaints does not support a constitutional claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Based upon the above well settled standards, dismissal in favor of the Remaining Defendants with respect to any claim asserted them which are premised upon their respective purported failures to take action in response to Nelson's complaints, grievances, and misconduct appeals is appropriate.

However, it is noted that the Complaint does satisfy the personal involvement requirement with respect to the claims raised against Defendants St. Clair (misconduct charge); Best, Taylor (verbal harassment, retaliation); Reibsome, Chamberlain, and Silks (deliberate indifference). Dismissal will be entered in favor of all other Remaining Defendants on the basis of lack of personal involvement.

**Verbal Harassment**

Plaintiff alleges that he was subjected to racial slurs, as well as threats of retaliation by Defendants Reibsome, Chamberlain, Best, Taylor, and Stover.

The use of words generally cannot constitute an assault actionable under § 1983. <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 n.7 (2d Cir.); <u>Maclean v. Secor</u>, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); <u>Murray v. Woodburn</u>, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); <u>Prisoners' Legal Ass'n v. Roberson</u>, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. <u>Balliet v. Whitmire</u>, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), <u>aff'd</u>, 800 F.2d 1130 (3d Cir. 1986) (Mem.). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, <u>see</u>

11

Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the
Fifth Amendment's substantive due process clause.

Verbal harassment, with some reinforcing act
accompanying them, however, may state a constitutional claim.
For example, a viable claim has been found if some action
taken by the defendant escalated the threat beyond mere
words.  See Northington v. Jackson, 973 F.2d 1518 (10th Cir.
1992) (guard put a revolver to the inmate's head and
threatened to shoot); Douglas v. Marino, 684 F. Supp. 395
(D.N.J. 1988) (involving a prison employee who threatened an
inmate with a knife).  Moreover, alleged instances of verbal
harassment which are not accompanied by any physical contact
are constitutionally insufficient.  See Hart v. Whalen, 2008
WL 4107651 *10 (M.D. Pa. July 29, 2008);  Wright v. O'Hara,
2004 WL 1793018 *7  (E.D. Pa. 2004)(correctional officer's
words and gestures, including lunging at prisoner with a
clenched fist were constitutionally insufficient because
there was no physical contact).

There is no indication that the verbal harassment
allegedly voiced against Nelson was accompanied by a
reinforcing act involving a deadly weapon as contemplated
under Northington and Douglas.  More importantly, it is not
alleged that the alleged verbal abuse was accompanied by any
physically intrusive behavior.  Given the circumstances
described by Plaintiff, the purported verbal remarks
attributed to Defendants Reibsome, Taylor, Stover and Best,
although offensive, were not of such magnitude to shock the
conscience as contemplated by this Court in  S.M. v. Lakeland

School District, 148 F. Supp.2d 542, 547-48 (M.D. Pa. 2001) and thus, did not rise to the level of a constitutional violation.

**Retaliation**

Plaintiff asserts that he was verbally threatened by Correctional Officers Best, Stover, and Taylor with retaliation over filing a grievance against Defendants Cunningham and Silks. Remaining Defendants contend that they are entitled to entry of dismissal with respect to the bald allegations of retaliation because Plaintiff alleges only that he was threatened with retaliation. See Doc. 32, p. 21.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005). Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

Once Plaintiff has made a prima facie case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

As noted in Allah, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied. Thus, the relevant inquiry is not whether the alleged retaliatory conduct was unconstitutional. On the contrary, Plaintiff only needs to establish that he was subjected to adverse action in retaliation for his engagement in constitutionally

14

protected conduct. The Remaining Defendants have not provided this Court with sufficient facts to warrant a determination that Plaintiff would have been subjected to a cell search and placed in the RHU even if the inmate had not engaged in any constitutionally protected activity.

Despite the liberal treatment afforded to pro se litigants, the Plaintiff has not set forth a viable claim of retaliation. The initial Rauser requirement requires that Plaintiff show that he was engaged in a constitutionally protected activity. Nelson's allegation that he was subjected to retaliation for submitting institutional grievances satisfies the Rauser requirement of pleading that the exercise of a constitutionally protected conduct was the motivating factor behind the purported retaliatory treatment.

The second prong of Rauser requires that Nelson allege that he suffered adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Rauser's third prong requires a prisoner must prove that his constitutionally protected conduct was a substantial or motivating factor in the alleged adverse action. In the instant case, Plaintiff contends only that he was verbally threatened with retaliation. There is no discernible allegation that Nelson was actually subjected to any type of retaliatory mistreatment. As such, the second and third Rauser adverse action requirements were not met. Moreover, this Court has already determined that mere verbal threats of retaliation such as the ones alleged by Nelson are

constitutionally insufficient. Dismissal will be granted with respect to the allegations of retaliation.

## **Deliberate Indifference**

Remaining Defendants next argue that LPNs Chamberlain and Silks did not exhibit deliberate indifference to the Plaintiff's medical needs. See Doc. 32, p. 23. As previously discussed Plaintiff alleges that on Friday November 13, 2015, he complained of blurred vison to LPN Chamberlain, she decided on her own to decrease the dosage of Tegretol from 400 mg to 300 mg by simply snapping one of the two 200 mg tablets he was receiving in half. The following day, LPN Silks likewise gave Nelson a lower dosage of his prescribed medication and the inmate continued on the alleged unauthorized decreased medication for a twelve (12) day period.

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In

order to establish an Eighth Amendment medical claim, an
inmate must allege acts or omissions by prison officials
sufficiently harmful to evidence deliberate indifference to a
serious medical need.  See Spruill v. Gillis, 372 F.3d 218,
235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional
Facility, 318 F.3d 575, 582 (3d Cir. 2003).  In the context
of medical care, the relevant inquiry is whether the
defendant was: (1) deliberately indifferent (the subjective
component) to (2) the plaintiff's serious medical needs (the
objective component).  Monmouth Cty. Corr. Inst. Inmates v.
Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571
F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed
by a physician as requiring treatment or one that is so
obvious that a lay person would easily recognize the
necessity for a doctor's attention."  Mines v. Levi, 2009 WL
839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d
at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347.
"[I]f unnecessary and wanton infliction of pain results as a
consequence of denial or delay in the provision of adequate
medical care, the medical need is of the serious nature
contemplated by the Eighth Amendment."  Young v. Kazmerski,
266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty.
Corr. Inst. Inmates, 834 F.2d at 347).

With respect to the serious medical need requirement,
exhibits attached to the Complaint clearly show that
Plaintiff was deemed to have a serious mental illness by
prison officials.  See Doc. 1, p. 55.  Based upon that

designation, this Court is satisfied at this juncture that the serious medical need requirement has been satisfied. However, the Court has not been presented with sufficient facts by Plaintiff which would warrant a determination the alleged side effects he suffered due to an increase in medication constituted a serious medical need.

With respect to the subjective deliberate indifference component, the Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 841. A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir.

18

2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

The Court of Appeals for the Third Circuit in Durmer added that a non-physician defendant can not be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.

Based upon his own factual assertions, Plaintiff has failed to satisfy the deliberate indifference requirement of Estelle. With respect to LPNs Chamberlain and Silks it is undisputed that they provided the Plaintiff with medication. There was no denial of care by those Defendants. Rather, the only allegations is that when Plaintiff presented them with complaints that he was suffering side effects, the two nurses allegedly made a medically unauthorized decision to decrease the Plaintiff's prescribed Tegretol from 400 mg twice a day to 300 mg twice a day. Such purported conduct does not support a claim that an apparent need for treatment was ignored or that treatment was denied or delayed. Rather, the Plaintiff's claims at best contend that LPNs Chamberlain and Silkes overstepped their authority and acted in a negligent fashion by decreasing the Plaintiff's medication in response to his complaints of having side effects without first obtaining the necessary authorization to do so from a physician. Since allegations of negligence are insufficient

to set forth a deliberate indifference claim, the civil rights claims against LPNs Chamberlain and Silks are subject to dismissal.

In regards to the other Remaining Defendants, many of whom were not medical personnel, the claims that they did not reprimanded the two nurses who allegedly decreased the dosage of his medication without proper authorization or had a misconduct charge dismissed, such conduct does not support a claim that those Defendants failed to provide or delayed needed medical care as required under <u>Estelle</u>.

With respect to the claims that non-medical Defendants St. Clair and Taylor ignored Nelson's request for immediate medical attention when he complained of blurred vison, under the standards set forth in <u>Durmer</u>, this allegation also fails since Plaintiff acknowledges that the medical staff did address his complaint the next day. This claim is further undermined by the fact that Nelson does not identify any treatment which could have alleviated his problem and been provided sooner. There is also no claim that Plaintiff's blurred vison was anything more then a temporary problem caused by the increase in his medication. Based upon those consideration St. Clair and Taylor are entitled to dismissal.

In conclusion, the allegations asserted against the Defendants simply do not rise to the level of a viable constitutional deliberate indifference claim.

**ADA**

Plaintiff asserts that conduct attributed to the Defendants also violated his rights under the Americans with Disabilities Acr (ADA).  <u>See</u> Doc. 1, ¶ 39.  The Remaining Defendants next contend that Plaintiff fails to allege that he was deprived of anything because of a disability.  <u>See</u> Doc. 32, p. 9.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12132.[5]  The ADA seeks "to assure even handed treatment and the opportunity for [disabled] individuals to participate in and benefit from programs [receiving financial assistance].  <u>Southeastern Community College v. Davis</u>, 442 U.S. 397 (1979).  <u>P.C. v. McLaughlin</u>, 913 F.2d 1033, 1041 (2d Cir. 1990).

The "evenhanded treatment" requirement does not, however, impose an affirmative obligation on public entities to expand existing programs but only that disabled

---

5.   The regulations implementing the ADA define a "qualified individual with a disability" as:
> "An individual with a disability who, with or without reasonable modifications to rules, policies or practices, . . . meets the essential eligibility requirements for the . . . participation in programs or activities provided by a public entity."

28 C.F.R. § 35.104 (1993).

individuals receive the same treatment as those who are not disabled. It has been recognized that the provisions of the ADA are applicable to prisoners confined in state correctional institutions.  See  Pa. Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998).

Based upon a liberal construction of the Complaint, Plaintiff has not sufficiently demonstrated that he is disabled for purposes of the ADA.  Second, the alleged conduct by the Remaining Defendants does not set forth a viable basis for a claim that Plaintiff was subjected to discrimination on the basis of any disability.  Accordingly, the Court will grant the request for dismissal of Nelson's ADA claim.

**Pendent Jurisdiction**

To the extent that Plaintiff wishes to pursue state law claims of negligence, federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts.  See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, 9 (1976).  A district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction.  See 28 U.S.C. § 1367(c)(3) (1997).  Decisions regarding pendent jurisdiction should be premised on considerations of judicial economy, convenience and fairness to the litigants.  New Rock Asset Partners v.

<u>Preferred Entity Advancements</u>, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the federal claim does not deprive the court of jurisdiction to adjudicate the pendent claim. <u>Id</u>. (citing <u>Lentino v. Fringe Emp. Plans, Inc.</u>, 611 F. 2d 474, 479 (3d Cir. 1979)). However, when the federal claim is dismissed prior to trial, a district court should decline to decide the pendent state claims, "unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so." <u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995).

Since all of the Plaintiff's federal claims in this matter have been dismissed, jurisdiction will be declined with respect to any state law negligence which Nelson wishes to pursue. An appropriate Order will enter.

<u>S/Richard P. Conaboy</u>
Richard P. Conaboy
United States District Judge

DATED: MARCH 7, 2018